**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Lonnie C. BAGGETT, Jr.,**
**Defendant–Appellant.**

**No. 89–7845**
**Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

May 23, 1990.

W. Gregory Hughes, Mobile, Ala., for defendant-appellant.

J.B. Sessions, III, U.S. Atty. and Richard H. Loftin, Asst. U.S. Atty., Mobile, Ala., for plaintiff-appellee.

Before FAY, HATCHETT and EDMONDSON, Circuit Judges.

PER CURIAM:

Defendant Lonnie C. Baggett, Jr. (Baggett) challenges the district court's denial of his motion to dismiss the charges against him. Baggett contends that jeopardy attached when the jury was sworn in his first trial, during which a plea agreement was reached after the prosecutor made his opening statement, and to subject him to trial again for the same alleged offenses would violate the Fifth Amendment of the United States Constitution. We reject Baggett's argument, AFFIRM the trial court's ruling, and REMAND for trial.

BACKGROUND

Baggett was charged on January 10, 1989 in a fifteen count indictment with ten drug offenses and one firearms violation. Following various pleadings and motions, Baggett was brought to trial on May 16, 1989. Before the jury was sworn, and before opening statements were made, the parties argued over the availability of certain tape recorded conversations between a confidential informant and Baggett. Counsel for Baggett asserted that the tapes were critical to his being able to effectively cross examine and impeach witnesses, and the prosecution was obligated to turn the tapes over to defendant. The prosecutor argued that the tapes were misplaced by the agents in charge of the investigation and that he was not at an advantage because he did not have the benefit of listening to the tapes while preparing for trial. The court decided to proceed with the initial stages of the trial until the tapes could be located and turned over to counsel for Baggett.

The judge then swore the jury, charging it with its responsibilities. The prosecutor followed with his opening statement. Counsel for Baggett elected to reserve his opening statement until after the government presented its case. Following the prosecutor's opening statement, the court recessed. When the court reconvened, it conducted further inquiry as to what happened to the tapes. After questioning an investigator and the confidential informant, the court concluded that the tapes were unavailable and decided to proceed with the trial, informing counsel for Baggett that he could use the fact that the tapes were missing to his advantage during cross examination of the confidential informant and closing argument. A recess ensued.

During the recess, the government and Baggett reached a plea agreement. Baggett agreed to plead guilty to count VII of the indictment in exchange for the government's recommendation of a downward departure from sentencing guidelines to eighteen months with credit for time served. Under the agreement, Baggett was also to give a statement to a representative of the United States Attorney's office, cooperate with the government, and divulge his knowledge regarding drugs in Conecuh County.

The court made the requisite inquiry to determine whether Baggett's guilty plea was made "voluntarily with the understanding of the nature of the charge and the consequences of the plea." R2–86. Throughout his colloquy with Baggett, the district judge repeatedly referred to his

authority to impose the sentence. For example, he asked whether Baggett realized that a departure from the guidelines "might not be followable" if the departure does not fit certain circumstances, and that a trial judge may depart upwardly to the maximum the law allows, "anywhere up to 20 years in the penitentiary." R2–75–77, 85. The court subsequently accepted the guilty plea to count seven of the indictment and set a date for the sentencing hearing.

At the sentencing hearing, the district judge heard testimony from two law enforcement officers from Alabama who stated that Baggett was cooperative and truthful in answering questions, but may not have told them everything he knew about criminal activity in Conecuh County. R3–12, 19. The agents further testified that the information with which Baggett provided them merely corroborated what they already knew. R3–11, 19. After hearing this testimony, the district court concluded that it could not "make, under the evidence presented to it, a finding that that assistance that has been proffered to this point is substantial within the meaning of the guidelines, and the Court is simply not authorized to do anything that would warrant a departure to the degree that has been set forth in the plea-bargaining." R3–23. Instead, believing that he had failed to advise Baggett at the time the plea was accepted that the court was not bound by the sentence suggested in the plea-bargain, the district judge allowed Baggett to withdraw his plea and set the matter for trial.

DISCUSSION

The sole issue raised on appeal is whether the district court erred in denying defendant's motion to dismiss on double jeopardy grounds. We review this question *de novo*. *United States v. Benefield*, 874 F.2d 1503, 1505 (11th Cir.1989). Counsel for Baggett argues that jeopardy attached when the jury was sworn in the first trial; therefore to try Baggett for the same offenses constitutes a violation of the double jeopardy clause of the Fifth Amendment. The government argues that the court rightfully rejected Baggett's plea agreement and double jeopardy has no application to this case.

■ "The Double Jeopardy Clause of the Fifth Amendment protects a defendant in a criminal proceeding against multiple punishments or repeated prosecutions for the same offense." *United States v. Dinitz*, 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976) (footnote omitted). "The underlying idea ... is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199 (1957). Generally, jeopardy attaches in a jury trial when the jury is empaneled and sworn. *Crist v. Bretz*, 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978); *Downum v. United States*, 372 U.S. 734, 734–38, 83 S.Ct. 1033, 1033–36, 10 L.Ed.2d 100 (1963). In the case of a plea bargain, with respect to the offense pleaded to, jeopardy normally attaches when the court unconditionally accepts a guilty plea. *United States v. Sanchez*, 609 F.2d 761, 762–63 (5th Cir.1980) (per curiam).

The question of when jeopardy attaches, however, only begins our inquiry. *Illinois v. Somerville*, 410 U.S. 458, 467, 93 S.Ct. 1066, 1072, 35 L.Ed.2d 425 (1973). For example, "[w]here, for reasons deemed compelling by the trial judge ... the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment." *Gori v. United States*, 367 U.S. 364, 368, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901 (1961). One compelling reason for declaring a mistrial is the failure of a jury to agree on a verdict. *United States v. Perez*, 22 U.S. (9 Wheat) 579, 580, 6 L.Ed. 165 (1824). Another has been held to exist when after trial has commenced, it is discovered that a critical procedural defect exists in the indictment such that a reversal of conviction on appeal would be mandated. *Somerville*, 410 U.S. at 468–69, 93 S.Ct. at 1072–73. Likewise, the Supreme

Court has held that a defendant may be retried for offenses of which a jury convicts him in the event that the conviction is later overturned on grounds other than insufficiency of the evidence. *North Carolina v. Pearce*, 395 U.S. 711, 719–20, 89 S.Ct. 2072, 2077–78, 23 L.Ed.2d 656 (1969); *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). A defendant also can be retried for the same offenses if during the trial, the defendant himself, or in conjunction with the prosecutor, requests a mistrial which is granted. *Dinitz*, 424 U.S. at 607–12, 96 S.Ct. at 1079–82; *United States v. Bobo*, 586 F.2d 355, 364 (5th Cir.1978), *cert. denied*, 440 U.S. 976, 99 S.Ct. 1546, 59 L.Ed.2d 795 (1979).

■ In this case, a new trial has been ordered because after being informed that the trial judge would not downwardly depart from sentencing guidelines, Baggett successfully withdrew his guilty plea at the sentencing hearing. Baggett contends that the double jeopardy clause prohibits trial on both the counts that were dismissed as a result of the plea bargain and the count to which he had pleaded guilty. However, as to the count to which he pleaded guilty, Baggett may be retried because he successfully withdrew his plea.[1] *See, e.g., Fransaw v. Lynaugh*, 810 F.2d 518, 524–25 (5th Cir.) ("[W]hen defendant repudiates the plea bargain, either by withdrawing the plea or by successfully challenging his conviction on appeal, there is no double jeopardy (or other) obstacle to restoring the relationship between defendant and state as it existed prior to the defunct bargain."), *cert. denied*, 483 U.S. 1008, 107 S.Ct. 3237, 97 L.Ed.2d 742 (1987); *see also Williams v. Kemp*, 846 F.2d 1276, 1285 (11th Cir.1988), *cert. dismissed*, —— U.S. ——, 109 S.Ct. 1579, 103 L.Ed.2d 931 (1989); *Clark v. Blackburn*, 605 F.2d 163, 164 (5th Cir.1979) (per curiam); *United States v. Garcia*, 589 F.2d 249, 250–51 (5th Cir.), *cert. denied*, 442 U.S. 909, 99 S.Ct. 2821, 61 L.Ed.2d 274 (1979).

Counsel for Baggett contends, however, that because the jurors had been sworn and trial had commenced, a new trial is barred by the double jeopardy clause. It matters not that the trial had already commenced when Baggett agreed to plead guilty, for Baggett "retain[ed] primary control over the course to be followed" after the prosecutor proposed a plea bargain. *Dinitz*, 424 U.S. at 609, 96 S.Ct. at 1080. "[A]fter appearing before his chosen jurors [Baggett] entered an arrangement designed to insulate him from what he feared would be their unfavorable reaction to his case." *Fransaw*, 810 F.2d at 528. In this case, Baggett has foregone his "valued right to have his trial completed by a particular tribunal" in exchange for relief from the consequences which might have resulted from a disposition rendered by that tribunal. *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). Consequently, as a result of Baggett's desire to enter a plea agreement, we find that Baggett's right to go to the first jury was outweighed by the public's right to "one complete opportunity to convict those who have violated its laws." *Arizona v. Washington*, 434 U.S. 497, 509, 98 S.Ct. 824, 832, 54 L.Ed.2d 717 (1978); *see United States v. Scott*, 437 U.S. 82, 100, 98 S.Ct. 2187, 2198, 57 L.Ed.2d 65 (1978).

As to the counts dismissed as a result of the plea bargain, we believe that *Fransaw*, 810 F.2d at 518, is instructive. In *Fransaw*, the defendant Fransaw was charged with two counts of murder. After commencement of trial and the introduction of testimony of two of the state's witnesses, Fransaw negotiated a plea agreement, whereby the state dismissed the second murder count in exchange for the defendant's plea of guilt to the first count. At the sentencing hearing, however, the judge sought to impose a fifty year sentence, which defense counsel believed was ten years longer than what the judge had originally promised. Following this disagree-

---

[1]. Baggett contends that notwithstanding his withdrawal of the guilty plea, double jeopardy should prevent a retrial because the court gave no indication that the plea bargain was unacceptable. We find this argument unpersuasive, however, insofar as the trial judge repeatedly indicated that he was not bound by the sentencing agreement between the parties. R2–75–77, 85.

ment, the judge gave Fransaw the option to withdraw his guilty plea and proceed with a new trial or be sentenced as a result of his guilty plea. Fransaw chose to withdraw his plea and upon being retried, was convicted of voluntary manslaughter, a lesser included offense of murder.

On appeal Fransaw premised his arguments on the contention that reinstatement of the second murder count, after it was dismissed by the prosecutor pursuant to their plea bargain, was a violation of the double jeopardy clause of the Fifth Amendment. Reasoning that "a defendant should not be able to reject a plea bargain and then erect the shield of double jeopardy to the revived counts," the court held that the retrial on the second murder count, dismissed as a result of the agreement, was not barred by the Fifth Amendment. *Fransaw*, 810 F.2d at 526. The court stated:

> Like the defendant who abandons the possibility of acquittal in the first proceeding by requesting a mistrial, Fransaw voluntarily surrendered the plea bargain's refuge against prosecution on the [second count of murder]. *Crist v. Bretz* emphasizes that jeopardy attaches when a jury is empaneled because of the 'need to protect the interest of the accused in retaining a chosen jury.' But Fransaw ... after appearing before his chosen jurors ... entered an arrangement designed to insulate him from what he feared would be their unfavorable reaction to his case.

*Id.* at 528 (footnote and citation omitted).

We view the case at bar as strikingly similar to *Fransaw*. For example, like Fransaw, Baggett did not reach an agreement with the prosecutor until after the jury had been sworn. Pursuant to the agreement, all but one charge was to be dismissed and the prosecutor was to recommend a substantial downward departure. After accepting a guilty plea, the trial judge rejected the sentencing agreement at the sentencing hearing, and permitted defendant to withdraw the guilty plea. Thus, we are placed in the same position as was the Fifth Circuit in *Fransaw*. A strict application of the rule that jeopardy attaches upon the swearing of a jury or the

acceptance of a guilty plea would result in a decision in favor of Baggett. Like the Fifth Circuit, however, we decline blindly to apply this rule without looking to its underlying principles. To hold that the double jeopardy clause bars prosecution for counts dismissed as a result of a subsequently withdrawn plea bargain would provide defendants with an opportunity to avoid prosecution altogether by entering a plea bargain after trial commences and revoking the plea at sentencing. Additionally, such a holding would discourage prosecutors from entering into plea bargains after the commencement of trial for fear that later prosecution would be barred. On the other hand, to hold that a defendant may be tried on the counts dismissed as a result of the plea bargain would place both parties in the position they occupied before voluntarily relinquishing that position. Applying the *Fransaw* holding, we find that Baggett is not free from prosecution on the counts previously dismissed as a result of the plea bargain.

For the foregoing reasons we AFFIRM the district court's denial of defendant's motion to dismiss.